CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 14 2010

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 5:07cr00058-3 |
| | ) | |
| v. | ) | <u>2255 MEMORANDUM OPINION</u> |
| | ) | |
| KENNETH ODELL CRAWFORD. | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |

Petitioner, Kenneth Odell Crawford, a federal inmate proceeding with counsel, filed this 28 U.S.C. § 2255 motion challenging the validity of his guilty plea and sentence of 60 months incarceration for conspiring to commit money laundering. Crawford alleges that his plea was not knowing and voluntary, that he was convicted upon insufficient evidence, that the prosecutor engaged in misconduct, and that counsel provided ineffective assistance on multiple grounds. This matter is before the court on respondent's motion to dismiss. The court finds that Crawford's plea was knowing and voluntary and that his remaining claims are procedurally barred or waived by his plea agreement. Accordingly, the court grants respondent's motion to dismiss.

**I.**

By superceding indictment, Crawford was charged with conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, and possessing firearms in furtherance of that offense, in violation of 18 U.S.C. § 924(c). After a three-day trial, a jury found Crawford not guilty of the firearms charge but hung on the drug charge. On the government's motion, the court declared a mistrial and set the drug charge for re-trial. Before that retrial, Crawford was charged in a second superceding indictment with conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, and conspiring to commit money laundering, in

1

violation of 18 U.S.C. §§ 1956(h) and 1957. Pursuant to a written plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, Crawford pled guilty to conspiring to commit money laundering. According to the plea agreement: (1) Crawford was pleading guilty because he was "in fact guilty"; (2) Crawford waived his right to appeal and to collaterally attack the judgment and sentence imposed by the court; (3) Crawford would make known to the court, no later than at the time of sentencing, any dissatisfaction or complaint he may have with his attorney's representation; (4) Crawford agreed to a forfeiture monetary judgment in the sum of $2,000,000.00, with the understanding that the United States would satisfy the money judgment from real estate listed in the plea agreement; (5) Crawford would be sentenced to a term of 60 months incarceration; (6) Crawford would be fined $225,000.00; (7) the United States would move to dismiss the remaining count, the drug charge, pending against Crawford; and (8) the United States would recommend a three point reduction in his total offense level for acceptance of responsibility.

At his plea hearing, Crawford, among other things, stated under oath that he had received a copy of the indictment; that he had discussed the charges and his case with counsel; that he was satisfied that his counsel was fully prepared on his behalf; that he read the entire plea agreement before he signed it; that he understood everything in the plea agreement; that no one had made any other or different promise or assurance to him to induce entry of the plea; that no one had forced him to enter the guilty plea; that he understood the maximum penalties, including incarceration, a fine, and forfeiture of certain assets; and that his plea was knowing and voluntary. After hearing a summary of the government's evidence against him, Crawford stated that he did not disagree with any of the evidence presented. Ultimately, Crawford pled guilty, and the court accepted his plea, finding that he was "fully competent and capable of entering an informed plea." The court sentenced

Crawford to 60 months incarceration, imposed a fine of $225,000.00, and ordered forfeiture of Crawford's interest in the property listed in the plea agreement (amounting to $2,000.000.00 in assets). Crawford did not appeal.

## II.

Crawford alleges that his plea was not voluntarily and knowingly made because he was "coerced" by threats that if he did not plead guilty, his mother would be imprisoned. However, this claim contrasts sharply with the statements Crawford made during his plea colloquy during which he affirmed to the court at least five times that his plea was both knowing and voluntary. Upon consideration of his claim, the court finds that his plea was entered both knowingly and voluntarily, and therefore, dismisses his claim.

"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977); and citing United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74).

During his plea hearing, Crawford affirmed that he completely understood the terms of the plea agreement, that he was entering the plea knowingly and voluntarily, and that he did not challenge the government's evidence against him. The court took care to ensure that Crawford was entering his plea both knowingly and voluntarily by reviewing the provisions until the court was fully

3

satisfied that Crawford understood.[1] In fact, the court asked Crawford at least five times whether anyone had threatened him or forced him to plead guilty.[2] The court made findings on the record at the plea hearing that Crawford was competent to plead and that he voluntarily and knowingly entered his plea. These findings were not mere formalities but rather reflected the court's considered opinion that Crawford was in fact fully competent and that his plea was knowing and voluntary. Nothing that has followed has dispelled that conclusion. Accordingly, the court finds that Crawford's challenge to the validity of his plea has no merit and, therefore, dismisses his claim.

## III.

Crawford alleges that evidence was insufficient to support his conviction[3] and that the prosecutor engaged in misconduct by "accepting his guilty plea" and seeking forfeiture of

---

[1] Further, before Crawford entered his plea, the court advised Crawford:

> Now, you understand that, from the Court's perspective – and I want to make this plain. It's up to you to make your decision as to whether you plead guilty or not guilty. I mean we have a jury that is prepared to come in here and hear everything on Monday if you want them to. It's up to you to decide, not up to me, not up to your lawyers, not up to anybody else in this room but you, your constitutional right to decide how you want to plead.

Thereafter, Crawford entered his plea of guilty.

[2] The court asked Crawford, "Has anyone made any other or different promise, that is, separate and apart from that plea agreement, or assurance to you of any kind in an effort to induce you to enter a plea of guilty in this case?" to which Crawford responded, "No, sir." The court then asked Crawford, "Has anyone attempted improperly to force you to plead guilty in this case?" to which Crawford responded, "No, nobody has forced me." Later, the court engaged Crawford in further questioning regarding the voluntariness of his plea, "Again, as I asked you before, no one has attempted in any way to force you to plead guilty; is that correct? You're doing this of your own free will?" to which Crawford responded "Yes, sir," and the court followed up by asking "And nobody has threatened you in any way?" to which Crawford responded, "No, sir," and the court continued, "[And nobody] promised you anything other than what we've spoken about here?" to which Crawford responded "No, sir."

[3] Crawford presents this claim as a claim that he is actually innocent of the offense to which he pled guilty. However, "actual innocence" is not an independent § 2255 claim, rather it's a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997). Inasmuch as the basis of his argument that he is actually innocent is that the government's evidence was insufficient to support his conviction, the court construes his claim as a challenge to the sufficiency of the evidence. To the extent his claim of actual innocence can be considered as a means of excusing his defaulted claims, the court will consider it as such.

4

$2,000,000.00. The court finds that his claims are procedurally barred because he did not raise them on direct appeal and nothing excuses the default. Accordingly, the court dismisses these claims.

"[H]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). Claims that could have been, but were not raised on direct appeal are procedurally defaulted unless the petitioner demonstrates both cause for the default and actual prejudice from the failure to review the claim,[4] Bousely, 523 U.S. at 622; United States v. Frady, 456 U.S. 152, 170 (1972); Wainwright v. Sykes, 433 U.S. 72, 84 (1977); United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994), or demonstrates that he is actually innocent, Schlup v. Delo, 513 U.S. 298, 321 (1995); Mikalajunas, 186 F.3d at 493. Actual innocence means factual innocence, not merely the legal insufficiency of his conviction or sentence. Bousley, 523 U.S. at 623-24. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006) (internal quotation marks omitted).

The Fourth Circuit has cautioned against reviewing routine claims challenging the sufficiency of the evidence in § 2255 proceedings, stating that "[p]risoners adjudged guilty of crime should

---

[4] To establish cause, Crawford must point to some objective factor beyond the defendant's control that impeded or prevented him from presenting his claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). Objective factors that may constitute "cause" include: (1) interference by officials that makes compliance impracticable; (2) a showing that the factual or legal basis for a claim was not reasonably available; (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel. Wright v. Angelone, 151 F.3d 151, 160 n.5 (4th Cir. 1998) (quoting McCleskey v. Zant, 49 U.S. 467, 493-94 (1991)). To show prejudice, Crawford must demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." McCarver v. Lee, 221 F.3d 583, 892 (4th Cir. 2000) (quoting United States v. Frady, 456 U.S. 152, 170 (1972)).

understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty." Taylor v. United States, 177 F.2d 194 (4th Cir. 1949); Sonnier v. United States, 314 F.2d 69, 71 (4th Cir. 1963) (noting that attack on the sufficiency of the evidence typically is not cognizable under § 2255); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (same). "Section 2255 does not exist to correct erroneous factual determinations or to challenge the sufficiency of the evidence or to correct errors which should have been brought to the attention of the trial court or the appellate court on direct appeal." Neeley v. United States, 405 F. Supp. 1186, 1189 (W.D. Va. 1975) (citing Sunal v. Large, 332 U.S. 174 (1947)).

Because Crawford did not raise his sufficiency of the evidence and prosecutorial misconduct claims on direct appeal, those claims are procedurally defaulted on collateral review unless he demonstrates cause and prejudice or actual innocence. Here, Crawford does not allege any cause or prejudice to excuse his default. However, in spite of his guilty plea to which he stated he was entering because he was "in fact guilty," Crawford alleges that he is actually innocent of the offense to which he pled guilty. In support of his claim of actual innocence, Crawford argues that the evidence was insufficient to support his conviction.[5] Inasmuch as Crawford only alleges legal insufficiency of his conviction, not factual innocence, the court finds that he has not demonstrated actual innocence to excuse his default. Bousley, 523 U.S. at 623-24. Accordingly, the court finds

---

[5] In support of his actual innocence claim, Crawford states:

the only evidence available is that Petitioner's co-defendants may have provided cash to others for the purpose of securing money orders to be deposited into bank accounts. And there is absolutely no evidence that Petitioner himself ever made deposits with these money orders. Second, even assuming that these acts occurred, there is no evidence that Petitioner had knowledge of them and/or that he had any intent to commit an illegal act.... [T]he government was unable to prove that the Petitioner knew of any illegal activity (i.e., drug conspiracy) during the first trial. Just because the jury found that Petitioner's father was illegally distributing drugs is insufficient to also hold the Petitioner guilty of that offense.

6

that Crawford procedurally defaulted these claims and that he has alleged nothing to excuse his default. Therefore, the court dismisses his claims.

## IV.

Crawford raises several claims of ineffective assistance of counsel. However, Crawford knowingly and voluntarily waived his right to collaterally attack his plea and sentence and Crawford's ineffective assistance claims fall within the scope of that waiver. Therefore, the court dismisses them.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right." Id. at 731-32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22; see also United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently

frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Lemaster, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy–specifically, whether the district court questioned the defendant about the . . . waiver–the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal and § 2255 rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver. Attar, 38 F.3d at 732; Lemaster, 403 F.3d at 220 n.2; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); Blick, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Crawford's guilty plea and waiver of collateral attack rights, the court must determine whether his claims falls within the scope of that waiver.

The court has already found that Crawford's plea was valid and further finds that his waiver

of collateral attack right is also valid. Therefore, the court must now determine whether Crawford's claims are included within the scope of the waiver. All of Crawford's claims pertain to conduct predating Crawford signing the plea agreement, and thus, are within the scope of his waiver.[6] These claims include that counsel was ineffective for convincing Crawford to plead guilty, failing to argue that the fine was excessive, and failing to argue that the forfeiture was disproportionate.[7] Based on the courts finding that Crawford's § 2255 waiver is valid and that these claims fall within the scope of that waiver, the court further finds that these claims of ineffective assistance of counsel are not cognizable claims in a § 2255 motion and, therefore, dismisses them.

V.

For the reasons stated herein, the court grants the government's motion to dismiss.

ENTER: This _14th_ day of May, 2010.

United States District Judge

---

[6] In addition to waiving his right to bring a § 2255 motion, Crawford expressly agreed "to make known to the court no later than the time of sentencing any dissatisfaction or complaint [he] may have with [his] attorney's representation." By failing to call his current complaints against counsel to the court's attention by the time of sentencing as agreed, he waived her right to bring such claims under § 2255 pursuant to the terms of the plea agreement. The court notes that, at his plea hearing, Crawford made a comment that he was dissatisfied with counsel. The court followed up on Crawford's comment and discerned that Crawford's complaint was not with counsel's preparation of the case, but rather with Crawford's bond having been revoked days earlier.

[7] The court notes that it imposed the $225,000.00 fine and $2,000,000.00 forfeiture pursuant to the terms of the Rule 11(c)(1)(C) plea agreement, therefore, the court presumes that Crawford's claim that counsel failed to make arguments regarding these issues pertains to plea negotiations. Pursuant to the plea agreement, Crawford agreed: 1) that he would "be sentenced . . . to pay a fine of $225,000.00," 2) "to the forfeiture monetary judgment in the sum of $2,000,000.00 ," and 3) that "forfeiture of this property is proportionate to the degree and nature of the offense committed by [him], and does not raise any of the concerns raised in United States v. Austin, 113 S.Ct. 2801 (1993)." He further agreed that "[t]o the extent such concerns are raised, [he] freely and knowingly waive[s] any and all right [he] may have to raise a defense of "excessive fines" under the Eighth Amendment to this forfeiture."